UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICTORIA VORVA,

                Plaintiff,        Civil Action No. 19-10682
                                          Honorable Judith E. Levy
v.                                         Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [13, 15]

Plaintiff Victoria Vorva ("Vorva") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 13, 15), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Vorva is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**ECF No. 15**) be **DENIED**, Vorva's Motion for Summary Judgment (**ECF No. 13**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN**

**PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

## II. REPORT

### A. Background

Vorva was 32 years old at the time of her application date of August 8, 2016, and at 5'5" tall weighed 250 pounds during the relevant time period. (Tr. 169, 91). She attended high school in special education classes and one year of college. (Tr. 188). She worked intermittently as a caregiver, cashier, and retail salesperson until January 1, 2006. (Tr. 188). She now alleges disability as a result of attention deficit disorder ("ADD"), learning disabilities, bipolar disorder, depression, arthritis, back problems, panic disorder, adult attention deficit and hyperactivity disorder ("ADHD"), mood disorder, nerve damage, moderate diffused posterior, thecal sac compression, spinal stenosis, neural foramen stenosis, degenerative disc disease, disc protrusion and reflex sympathetic dystrophy ("RSD"). (Tr. 187).

After Vorva's application for SSI was denied at the initial level on December 22, 2016 (Tr. 110), she timely requested an administrative hearing, which was held on April 26, 2018, before ALJ B. Lloyd Blair. (Tr. 50-71). Vorva, who was represented by attorney Adam Banton, testified at the hearing, as did vocational expert John N. Stokes. (*Id.*). On June 7, 2018, the ALJ issued a written decision finding that Vorva was not disabled under the Act. (Tr. 14-26). On January 10, 2019, the Appeals Council denied review. (Tr. 1-9). Vorva timely filed for judicial review of the final decision on March 7, 2019. (ECF No.

1).

The Court has thoroughly reviewed the transcript in this matter, including Vorva's medical record, function and disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B. The ALJ's Application of the Disability Framework Analysis

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

>Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Vorva was not disabled under the Act. At Step One, the ALJ found that Vorva had not engaged in substantial gainful activity since June 20, 2016 (the application date). (Tr. 19). At Step Two, the ALJ found that she suffered from the following severe impairments: attention deficit disorder (ADD); attention deficit hyperactivity disorder (ADHD); learning disability; obesity; lumbago; sciatica; cervicalgia; anxiety; and depression. At Step Three, the ALJ found that Vorva's impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment. (Tr. 20-21).

The ALJ then assessed Vorva's residual functional capacity ("RFC"), concluding that she was capable of performing sedentary work, with the following additional limitations: "[S]he should never use ladders, scaffolds, or ropes. She can occasionally use ramps, stairs, kneel, crouch, crawl, or balance. She can occasionally bend, twist, and turn

at the waist and neck. She can occasionally push or pull with the left upper extremity. She requires simple repetitive tasks that does [sic] not involve concentration on detailed or precision tasks, multi-tasking, computing, calculating, or problem solving. She cannot engage in team-work or work with the public." (Tr. 21).

At Step Four, the ALJ found that Vorva had no past relevant work. (Tr. 25). At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Vorva was capable of performing the jobs of document preparer (90,000 jobs nationally), production worker (25,000 jobs nationally), and escort driver (159,000 jobs nationally). (Tr. 25-26). As a result, the ALJ concluded that Vorva was not disabled under the Act. (Tr. 26).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions

of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D. Analysis**

In her motion for summary judgment, Vorva argues that the ALJ's Step Three finding – that her impairments do not meet or medically equal any Listing– is not supported by substantial evidence.[1] (ECF No.1277-83). For the reasons set forth below, the Court finds merit to this argument.

---

[1] Vorva also argues that the ALJ erred in formulating her RFC. (ECF No. 13, PageID.1269-77). Because the Court is recommending remand on other grounds, it declines to address the merits of

Although Vorva's focus here is on Step Three, the Court begins its analysis one step earlier in the ALJ's sequential decision-making process. At Step Two, the ALJ found, in relevant part, that Vorva had numerous "severe" physical impairments including obesity, lumbago, sciatica, and cervicalgia. (Tr. 20). However, notwithstanding that Vorva's September 2017 MRI includes a diagnosis of degenerative disc disease, which the Commissioner admits satisfies the definition of a spinal disorder under 20 C.F.R. Pt. 404, Subpt. 1, § 1.04, the ALJ did not identify degenerative disc disease as one of Vorva's severe impairments, or otherwise mention it in her Step Two discussion. (Tr. 20; ECF No. 15, PageID.1316.) Regardless, the issue seems to have spilled over to the ALJ's Step Three analysis in a way that merits remand even if there was no Step Two error.

At Step Three, the ALJ only assessed Vorva's mental impairments under Listing 12.00. (Tr. 20-21). He did not assess her physical impairments *at all*. (*See id.*) Vorva now argues that the ALJ erred at Step Three in failing to properly analyze or explain why her back impairments do not meet or medically equal Listing 1.04(A) – disorders of the spine. (ECF No. 13, PageID.1277-83). The Court agrees.

---

this argument. Nonetheless, on remand, the ALJ should ensure that proper consideration is given to this issue as well. In particular, the Court notes that Dr. Yee, Vorva's treating physician who saw her one to two times a month for two years, stated that Vorva could only "rarely" lift more than ten pounds. (Tr. 713.) He also stated that Vorva could never use her hands for grasping, turning, twisting, fine motor manipulation and/or reaching overhead. (Tr. 714.) As Vorva points out in her brief, these limitations appear to be supported by multiple treatment records. (Tr. 342, 471, 473, 476, 683, 783, 1122.) Yet, the ALJ stated, in conclusory fashion, that Yee's "opinions" were "not supported by the medical records," and went on to mention only Dr Yee's opinion related to the number of days of work he believed Vorva would miss each month. (Tr. 23.) Moreover, the ALJ did not elsewhere mention the foregoing limitations in his RFC, but rather simply stated that Vorva could "occasionally push or pull with the left upper extremity." (Tr. 21.) On remand, the ALJ should thoroughly discuss the medical evidence, including: Dr. Yee's opinion; the above-referenced medical records; and Vorva's 2014 and 2017 MRIs, 2017 CT and 2015 nerve conduction studies (Tr. 275, 471, 860, 950), as they relate to her ability to use her hands and arms to perform whatever RFC the ALJ ultimately determines.

7

While the regulations do not "require the ALJ to address every listing," if "the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled under a listing, the ALJ should discuss that listing.'" *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013) (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). In light of the record evidence discussed below, Vorva meets the "substantial question" standard.

As Vorva recognizes, this Court will not overturn an ALJ's decision if the failure to articulate Step Three findings was harmless. (*Id.* at 20-21 (citing *Allen v. Comm'r of Soc. Sec.*, No. 16-170, 2016 WL 6471092, at *3 (W.D. Mich. Nov. 2, 2016)). Such an error is harmless where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ *would have* found the claimant not disabled …." *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 861 (E.D. Mich. 2012)) (quoting *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 657 (6th Cir. 2009) (internal quotations omitted) (emphasis in original). Here, however, the Court cannot say that the ALJ's error is harmless.

In order for Vorva to meet the criteria of Listing 1.04(A), she must show that she has a disorder of the spine (with degenerative disc disease being one such disorder), which results in compromise of a nerve root or the spinal cord with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing § 1.04(A)(emphasis added).

It is well-settled that to "meet" a Listing, a claimant's impairments must satisfy each and every element of the Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (emphasis in original); *Blanton v. Soc. Sec. Admin.*, 118 F. App'x 3, 6 (6th Cir. 2004) ("When all the requirements for a listed impairment are not present, the Commissioner properly determines that the claimant does not meet the listing."). In this case, thorough consideration of the objective medical evidence illustrates that the ALJ's failure to analyze whether Vorva met or medically equaled Listing 1.04(A) is not harmless.

Vorva submits close to a thousand pages of medical evidence to support her application. (Tr. 247-1212). By way of background, Vorva has a long history of both mental and physical impairments. (*See id.*) With regard to her back impairments specifically, from 2014 through 2018, Vorva treated with the Beaumont Taylor Pain Clinic (Tr. 247-304; 840-1098), Oakland Healthcare – Westland (Tr. 342-441; 683-697; 710-714), the Michigan Neuroscience Clinic (Tr. 457-496; 1099-1137), and Westland Family Practice (Tr. 730-839).

On August 25, 2014, Vorva underwent an MRI of the lumbar spine at the Beaumont-Taylor Pain Clinic, which showed severe multilevel degenerative changes. (Tr. 275). Specifically, it showed: "severe disc space narrowing at L2-L3, L4-L5 and L5-S1"; a "mass effect on the right S1 nerve root" and foraminal disc protrusion "with moderate left neural foramina stenosis due to underlying facet joint degenerative disease" at L5-S1; and a disc

9

bulge at L4-L5 and facet joint degenerative disease. (*Id*.)  A little over a year later, a new MRI taken for comparison purposes showed a "[n]ew disc protrusion at L5-S1." (Tr. 460). An MRI from April 8, 2017, showed "multilevel degenerative and discogenic changes of the lumbar spine with findings most pronounced at the L4-L5 and L5-S1 levels." (Tr. 950). Some findings at both L4-L5 and L5-S1 included circumferential disc bulge with disc protrusion, and "severe" right neural foraminal narrowing. (*Id.*).  And, in October of 2017, an MRI showed additional worsening at certain locations, including L4-L5, where there was "disc desiccation and disc height loss with degenerative endplate changes . . . a posterior disc bulge eccentric to the right that contacts the descending right L5 nerve in the subarticular recess . . ." and at L5-S1, where there was "disc desiccation and disc height loss . . . a broad-based right paracentral disc protrusion that contacts the descending right S1 nerve. . . . [and] facet arthropathy with moderate bilateral neural foraminal narrowing." (Tr. 860).  Moreover, the record indicates that this last MRI was performed because Vorva was "having difficulty getting up from seated position and then again sitting down." (*Id.*).

On December 3, 2014, Vorva underwent an epidural injection at Oakwood Healthcare in Westland at L4-L5 in an attempt to treat her degenerative disc disease, lumbar spondylosis and lumbago at that level. (Tr. 272).  This was followed by a positive straight leg test on February 18, 2015,  (Tr. 255), and another injection on March 11, 2015, at L3-L4.  (Tr. 269-71).

With regard to her cervical pain, on November 16, 2015,Vorva had another MRI at Beaumont-Taylor Pain Clinic.  (Tr. 277).  The results showed a broad-based central disc protrusion resulting in the *obliteration* of the thecal sac at C5-C6.  (*See id*.; *cf.* Tr. 80 (noting

10

that in 2008, Vorva's L5-S1 disc bulge "did not result in further narrowing of the thecal sac.")).

Vorva had two abnormal EMGs through Neurologist Omar I. Ahmad in November of 2015. (Tr. 469-471). The first, on November 17, 2015, showed mild chronic radiculopathy at C7 (and carpal tunnel syndrome at the wrists). (Tr. 471). The second one, on November 20, 2015, revealed evidence of a mild chronic bilateral S1 radiculopathy. (Tr. 469). Progress notes from the Michigan Neuroscience Clinic repeatedly detail spotty sensory loss to pinprick tests and light touch in Vorva's arms and legs, weak deep tendon reflexes and an antalgic gait throughout all of 2016. (Tr. 473-76, 479, 482). She had another steroid injection on December 15, 2015. (Tr 912).

During 2016 and 2017, Vorva continued to treat with Beaumont Taylor Oakwood Pain Center. On October 6, 2016, she had another positive straight leg test in the seated position. (Tr. 938). She underwent numerous steroid injections including, but not limited to, on May 3, 2016, November 10, 2016, and January 12, 2017. (Tr. 899, 903, 907, 912, 1120, 1122, 1127). She underwent another MRI on April 8, 2017, that showed "multilevel degenerative and discogenic changes of the lumbar spine with findings most pronounced at the L4-L5 and L5-S1 levels." (Tr. 950). She had another positive straight leg test and muscle weakness on February 15, 2018 and December 15, 2018. (Tr. 264, 869). Progress notes form the Michigan Neuroscience Clinic repeatedly detail spotty sensory loss to pinprick tests and light touch in Vorva's arms and legs, and weak deep tendon reflexes and an antalgic gait throughout all of 2017 and 2018. (Tr. 1100, 1110, 1122).

Considering all of the foregoing evidence, the Court cannot find that the ALJ's failure to analyze whether Vorva met or medically equaled Listing 1.04(A) was harmless. *M.G.*, 861 F. Supp. 2d at 861. Vorva presented evidence that she suffers from a disorder of the spine – degenerative disc disease – with both lumbar and cervical radiculopathy. (Tr. 275, 469-471). Evidence cited above at least arguably evidences compromise of a nerve root or the spinal cord. (Tr. 275, 277, 860). And, Vorva presented evidence that these impairments caused her to suffer "neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing § 1.04(A) (emphasis added). With regard to neuro-anatomic distribution of pain, Vorva complained on multiple occasions of pain radiating to her lower extremities as well as numbness and/or weakness in both lower extremities. (Tr. 342-442). There is also objective evidence supporting her accounts of neuro-anatomic pain in her October 14, 2017 MRI and her two EMGs. (Tr. 469-471, 860-63).[2]

---

[2] The Commissioner's argument that Vorva cannot establish the 12-month durational requirement as to this aspect of the Listing because the relevant objective evidence is from tests performed about two years apart lacks merit. (ECF No. 15, PageID.1316.) First, the case cited by the Commissioner, *McKeel v. Comm'r of Soc. Sec.*, No. 14-CV-12815, 2015 WL 3932546, at *8 (E.D. Mich. June 26, 2015), is unhelpful as it merely recites the unremarkable proposition that "all of the criteria [of a particular listing] must be met concurrently for a period of twelve continuous months." *McKeel*, 2015 WL 3932546, at *8 (citing 20 C.F.R. § 404.1525(c)(3), (4); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00D) ("[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation"). In short, *McKeel* is bereft of any analysis or analogous facts that support the ALJ's argument. Second, the ALJ did not cite the regulations' durational requirements as a basis for finding the Vorva did not satisfy the listing in question. Finally, given the record evidence

In addition, the record contains evidence of a limited range of motion of Vorva's spine. (*E.g.*, Tr. 267, 528). There also is objective evidence of motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss. (Tr. 260, 431, 473-76, 479, 482, 687, 795, 863, 869, 938, 941).[3] And, the record reflects multiple positive straight-leg raising tests. (Tr. 255, 264, 863, 938, 941).[4]

In summary, in light of the foregoing, the Court cannot say that the ALJ's failure to address Listing 1.04(A) is harmless error. Regardless of how the ALJ might ultimately decide Vorva's claim, at this juncture, the Court cannot say that, if the ALJ had made the required findings at Step Three, he necessarily *would have* found that Vorva does not meet or medically equal the relevant Listing. Accordingly, the Court cannot conclude that the ALJ's Step Three determination is supported by substantial evidence, and remand is appropriate. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011).

---

discussed above, the Court cannot say that had the ALJ considered the issue, he would have reached the conclusion urged by the Commissioner.

[3] Here, too, the Commissioner argues that Vorva cannot meet the durational requirement. (ECF No. 15, PageID.1317.) While the Court recognizes that the string of instances cited by the Commissioner where Vorva was found to have "five out of five" strength in her upper and lower extremities may ultimately doom her ability to satisfy this aspect of the Listing, the Commissioner also recognizes that Vorva presents records showing muscle weakness or atrophy on multiple occasions between August 2015 and October 2017. (*Id.*) It is for the ALJ, not this Court, and not the Commissioner in summary judgment arguments, to weigh and resolve this conflicting evidence.

[4] The Commissioner contends that this issue does not warrant remand because Vorva did not demonstrate that the straight leg tests were performed in both the sitting *and* supine positions. (ECF No. 15, PageID.1318.) But this is not a convincing argument for two reasons. First, as Vorva notes, only one of the tests specifically reflects that it was performed in the "seated position," so one reasonable inference is that one or more of the other referenced tests was performed in the supine position. (ECF No. 13, PageID.1280-81; Tr. 938.) Moreover, the ALJ sheds no light on whether this issue played any role in his failure to discuss Listing 1.04 at Step Three.

### III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**ECF No. 15**) be **DENIED**, Vorva's Motion for Summary Judgment (**ECF No. 13**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

Dated: January 22, 2020          s/David R. Grand
Ann Arbor, Michigan              DAVID R. GRAND
                                 United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also*

*Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 22, 2020.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager
